UNITED STATES *v.* WILLIAM J. OBERLE, INC.

No. 4652.—Entered at New Orleans, La., May 7, April 16, 9, 5, March 26, 1938. Entry Nos. 3612, 3384, 3335, 3310, 3203.

(Decided October 10, 1939)

Webster J. Oliver, Assistant Attorney General (Richard E. Fitz Gibbon and William J. Vitale, special attorneys), for the plaintiff.
Daniel P. McDonald for the defendant.

EVANS, Judge: This is an appeal to reappraisement brought by the collector against the action of the appraiser at the port of New Orleans in appraising 16 invoices of okra at 75 cents per hamper. The invoices are included in 5 different appraisements which were consolidated for trial as one case. The evidence consists of the report of a special agent introduced on behalf of the Government and some 9 affidavits received on behalf of the defendant. These were received in reverse order, however, so that the affidavits are marked Collective Exhibit 1 and the special agent's report Exhibit 2. The merchandise originated in Cuba and by stipulation it was agreed that the product is Cuban type okra. All these importations were exported from Havana.

The special agent's report, which I find admissible, states that there is no foreign-market value because the Cuban market is supplied with okra culled from the crop in packing for export to the United States, the better grade being exported. He states that much of the okra is shipped to the United States on consignment but that he was able to find records of sales for shipment to the United States and to the port of Tampa. He gave a list of outright sales made during the months of March, April, and May of 1938, wherein the prices range from 75 cents to $1.70 per hamper, in quantities of from 3 crates to as much as 130 crates per sale. The affidavits of the defendant were made by shippers who exported on consignment and neither of them assumed to give an export value but each of them states in effect that there is no definite price at which Cuban okra is sold in the Havana market; that sales are made at whatever price the seller could obtain and that "the selling prices would often vary in the course of one day as much as 300 percent, that is, from $1.50 per hamper to $0.50 per hamper, and that the market was highly competitive and this commodity was sold in this market in no definite quantity and in no uniform price."

In spite of this information every entry made by this importer was at the same value, 75 cents per hamper, although a number of the invoices were accompanied by bills and consular invoices upon which

the price of the okra was stated to be $1. It therefore seems that the Government got no benefit of any fluctuation in the market. The brief for importer states that the appraiser failed to indicate upon what basis he had appraised. I find that 7 out of 16 of the invoices were appraised at export value. If the effect of the importer's testimony is to show that there was no uniform value in Cuba, either foreign or export, then the merchandise should have been appraised at the next value required by statute. It is my opinion, however, that there is sufficient evidence here to show that there is an export market value and that Havana is the principal market in the country of exportation. The finding of the usual wholesale quantity is somewhat different but since the Government made no question but what the finding of the appraiser, whatever it was in respect to that item, was right, I assume the presumption that attached to the appraiser's findings in that respect would prevail. Exhibit 2 would indicate that the usual wholesale quantity ranges from 30 to 40 crates, which I find to be the usual wholesale quantity.

I find from a preponderance of the evidence that the merchandise involved in reappraisement 125887–A was dutiable at the value found by the appraiser. I further note that the plaintiff abandoned its appeal with respect to that merchandise.

In reappraisement 125888–A I find the dutiable value of the merchandise to be $1.40 per hamper, packed.

In reappraisement 125889–A I find the dutiable value to be $1.10 per hamper, packed.

In reappraisement 125890–A I find there was no evidence introduced to overcome the presumption of correctness attaching to the appraiser's action and I therefore affirm his finding of value.

In reappraisement 125891–A I find that there was no evidence introduced to overcome the presumption of correctness attaching to the appraiser's action and the value found by him is the correct value.

All of these values are export values. Judgment will be rendered in accordance with this decision.